IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WM. C. PLOUFFE, JR.          :      CIVIL ACTION
                             :
          v.                 :
                             :
MICHAEL GAMBONE, et al.      :      NO. 11-6390

MEMORANDUM

McLaughlin, J.                              June 20, 2012

This is the second lawsuit by pro se plaintiff William C. Plouffe, Jr. ("Plouffe") arising out of his termination from employment at Kutztown University of Pennsylvania (the "University").  Plouffe brings claims under 42 U.S.C. § 1983 and various state laws against: (1) the Association of Pennsylvania State College & University Faculties ("APSCUF" or the "Union"), a labor union that represents the University faculty under a Collective Bargaining Agreement; (2) Steve Hicks and Julie Reese, who are APSCUF officials; (3) Michael Gambone, Mark Renzema, Jonathan Kremser, and Pietro Toggia, who are University professors sued in their capacity as members, representatives, employees, officers, policymakers, or agents of APSCUF; and (4) various John Does.[1]

The defendants move to dismiss the Amended Complaint

_____

[1] The Amended Complaint names all of the individual defendants in their individual and official capacities.  However, the APSCUF official defendants are not state employees, and the University professor defendants appear to be sued only insofar as they acted on behalf of APSCUF.  ECF No. 12.

pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court
will grant the motion with prejudice as to all claims against
defendants APSCUF, Steve Hicks, and Julie Reese.  The Court will
also grant the motion as to the following claims against
defendants Gambone, Renzema, Kremser, and Toggia: the
Pennsylvania administrative agency law claim (Count 4), the
Weingarten claim (Count 6), and the duty of fair representation
and fiduciary duty claims (Count 7 and the count mislabeled as
Count 10, which the Court will refer to as "Count 8").  The Court
will deny the motion as to the § 1983-based claims against
defendants Gambone, Renzema, Kremser, and Toggia.


I.   Background[2]

        The allegations in this case are, in substantial part,
identical to the ones in the operative complaint in Plouffe's
previously filed lawsuit, Case No. 10-cv-1502 (hereinafter the
"first lawsuit"), such that it is sometimes unclear whether the
term "Defendants" refers to the ones in this case or the ones in
the first lawsuit.  Both cases arise out of Plouffe's termination
from employment following conflicts with members of the
criminology department (the "Department") at Kutztown University

_____

        [2] The Court accepts all well-pleaded facts in the amended
complaint as true and draws all reasonable inferences in favor of
the non-moving party, while disregarding any legal conclusions.
See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir.
2009).

(the "University").  The Court previously outlined the facts surrounding Plouffe's conflicts and termination in the first lawsuit and incorporates those facts here by reference.  <u>See</u> ECF No. 180 in 10-cv-1502.  Below, the Court sets forth only the facts relevant to this lawsuit.

During the first year of his employment at the University, Plouffe approached defendant Michael Gambone, then local APSCUF union president, for assistance regarding his conflicts with the Department, but Gambone refused, stating that he was friends with Professor Logan (a defendant in the first lawsuit) and would not give Plouffe any help.  During his second year of employment, Plouffe again went to APSCUF for assistance, but the state office informed him through the new Union president that Plouffe could not be represented by the Union because of a conflict of interest.

Plouffe later discovered, however, that Gambone was representing the Department in its complaint against him even though the Union had previously refused to represent Plouffe against the Department.  Plouffe was advised by Paul Quinn, the new local Union president, to seek guidance from other Department members.  He did so, and defendants Renzema, Kremser, and Toggia agreed to fulfill that function on a confidential basis.  As it turned out, Plouffe discovered that these three professors had fed confidential information to the Department Chair (a defendant

in the first lawsuit), who then used the information against Plouffe.  Am. Compl. ¶¶ 98-102.

Plouffe attempted to request from the Union copies of previous investigations, grievances, and arbitrations involving the University in advance of his termination hearing, but he was not allowed to access the materials.  Prior to his hearing, Plouffe requested to meet with a state Union representative, but the Union refused.  The Union attorney also refused to speak with Plouffe.  Id. ¶¶ 104-07.

The state Union representative, defendant Julie Reese, met with Plouffe for about half an hour prior to his termination hearing at the University.  Plouffe brought a lot of material to discuss, but Reese refused to listen to Plouffe explain his view of the issues or examine his materials.  Plouffe asked Reese to request a continuance, but she refused and told him to just answer the University President's questions and not irritate him. At the hearing itself, Reese presented nothing, orally or in writing, in support of Plouffe, and Plouffe was terminated from the University a few days later.  Id.  ¶¶ 108-110.

After Plouffe's termination, he immediately filed a grievance.  During the grievance process, Plouffe requested to meet with Union officers and attorneys to discuss the matter, but the requests were denied.  The Union refused to provide him with an explanation of how they were going to proceed with the matter.

Id. ¶¶ 111-12.

After Plouffe's grievance went through the three pre-arbitration grievance stages, defendant Reese advised Plouffe that he was not allowed to appear at the State Grievance Committee hearing, where the Committee would decide if the case could go to arbitration.  Reese told Plouffe it was Union policy that subjects not speak to the Committee and that Plouffe would only be allowed to submit two pages in support of his grievance. Plouffe later discovered that Reese advised the Committee not to take the matter to arbitration.  Plouffe requested a tape recording of the hearing, but the Union never provided it. Finally, the state Union president, Steve Hicks, refused to overrule the recommendation of the Committee not to take the matter to arbitration.  Id. ¶¶ 114, 116.


II.  Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2008)); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard asks for more than a sheer possibility that a defendant has acted unlawfully. Iqbal, 556 U.S. at 678.  A complaint that pleads facts that are

5

merely consistent with a defendant's liability stops short of the line between possibility and plausibility of entitlement to relief.  Id.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).  A plaintiff must plead factual content that permits the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id.

To properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred.  Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010); see also Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a meeting of the minds).  A plaintiff alleging conspiracy must plead enough factual matter which, if taken as true, suggests that an agreement was made or, in other words, plausible grounds to infer an agreement.  Great W. Mining, 615 F.3d at 178.


III. Analysis

A.   Section 1983 Claims (Counts 1, 2, 3, 5)

Section 1983 provides that "[e]very person who, under color of [state law] subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured" in an appropriate action.  42 U.S.C. § 1983.  To recover under § 1983, a plaintiff must establish that the defendants acted under color of state law to deprive the plaintiff of a right secured by the Constitution or laws of the United States.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).  The statute of limitations for a § 1983 claim arising in Pennsylvania is two years.  See Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); 42 Pa. Cons. Stat. § 5524(2).

The defendants move to dismiss the § 1983 claims for failure to file within the statute of limitations, failure to plead action under color of law, and failure to allege a deprivation of a federal right.  The Court addresses each argument below.

### 1.   § 1983: Statute of Limitations

The defendants argue that since Plouffe was terminated by the University on October 9, 2009, his complaint is time-barred under the two-year statute of limitations because it was not filed until October 14, 2011.[3]  The Court perceives no statute of limitations bar to Plouffe's § 1983 claims.

October 9, 2011 fell on a Sunday, and Monday, October

---

[3] The amended complaint relates back to the date of the original complaint under Federal Rule of Civil Procedure 15(c).

10, 2011 was a legal holiday.  The last day for Plouffe to file his claims was thus October 11, 2011.  See Fed. R. Civ. P. 6(a). Plouffe filed his application to proceed in forma pauperis ("IFP") along with his complaint on October 11, 2011.  ECF No. 1. After the Court granted IFP status to Plouffe, his complaint was then officially docketed on October 14, 2011.  For statute of limitations purposes, the date of the complaint relates back to the date of the IFP application, thus rendering his complaint timely.  See Jackson v. Nicoletti, 875 F. Supp. 1107, 1113 n.11 (E.D. Pa. 1994); Jarrett v. U.S. Sprint Commc'ns. Co., 22 F.3d 256, 259 (10th Cir. 1994).


                2.   § 1983: Under Color of Law

          Action under color of state law "requires that one liable under § 1983 have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  Harvey v. Plains Tp. Police Dep't, 635 F.3d 606, 609 (3d Cir. 2011) (citing Abbott v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998)).  Conduct that satisfies the state action requirement of the Fourteenth Amendment meets § 1983's requirement of action under color of state law.  Jackson v. Temple Univ., 721 F.2d 931, 932-33 (3d Cir. 1983).  The ultimate issue is whether the alleged infringement of federal rights is fairly attributable to the

8

state - a fact-bound inquiry.  Id. at 933; McKeesport Hosp. v. Accreditation Council, 24 F.3d 519, 523 (3d Cir. 1994).

Generally speaking, a labor union is not a state actor. See Jackson, 721 F.2d at 933 (affirming summary judgment on § 1983 claim against union where union's refusal to bring plaintiff's grievance to arbitration was not state action); Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002); Perry v. Metro. Suburban Bus Auth., 390 F. Supp. 2d 251, 263 (E.D.N.Y. 2005).  Indeed, although the amended complaint alleges that APSCUF is a union "formed under the laws of the Commonwealth of Pennsylvania, to represent the faculty of Kutztown University," there are no allegations that APSCUF is anything but a private entity, or that the APSCUF employee defendants are anything but private actors.  Am. Compl. ¶ 7.  In addition, the University professor defendants are apparently being sued in their capacity as Union representatives or agents, not as state university employees.

However, state action may be found if a private party willfully participates in joint action or a conspiracy with the State or its agents to deprive a person of a constitutional right.  Dennis v. Sparks, 449 U.S. 24, 28 (1980); Abbott v. Latshaw, 164 F.3d 141, 147-48 (3d Cir. 1998); McKeesport Hosp. v. Accreditation Council, 24 F.3d 519, 524 (3d Cir. 1994).  To allege such a conspiracy, the complaint must specifically present

9

facts tending to show agreement and concerted action to deprive the plaintiff of his rights.  See Dennis, 449 U.S. at 27-28; Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 179 (3d Cir. 2010).  Although the Court of Appeals for the Third Circuit has recognized that "direct evidence of a conspiracy is rarely available and that the existence of a conspiracy must usually be inferred from the circumstances," allegations of conspiracy must provide some factual basis to support the existence of agreement and concerted action. Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184-85 (3d Cir. 2009) (citation omitted).

Plouffe argues that paragraphs 101, 103, 107, 109, 111, 113, 115, 117, 118, and 120 of his amended complaint allege collaboration with state actors such that the defendants' actions can be attributable to the state.  But those paragraphs merely state, in conclusory fashion, that defendants' conduct:

> amounted to joint and concerted activity with a common goal with the Defendants in the related case, Case No. 10-cv-1502, to violate Plouffe's [rights] such that liability should attach to the Union as a State and/or government actor, agent, and/or assistant, as [defendants were] acting at or with the encouragement and/or inducement of them.

See, e.g., Am. Compl. ¶¶ 101, 103, 107, 109, 111, 113, 115, 117, 118, 120.  These statements, by themselves, are conclusory at best, and the Court disregards them as bare recitals of the elements of conspiracy.  The question is whether Plouffe has alleged sufficient facts to back up these conclusory assertions.

The facts supporting the existence of a conspiracy in this case are thin, but the Court finds for the purposes of this motion that Plouffe has adequately alleged state action as to defendants Michael Gambone, Mark Renzema, Jonathan Kremser, and Pietro Toggia.

a.   <u>Gambone, Renzema, Kremser, Toggia</u>

Plouffe alleges that during his first year of employment at the University, he asked defendant Gambone, who was the local Union president that year, to assist him when the Department was trying to take Plouffe's course away from him and give it to another University professor, Keith Logan (a defendant in the first lawsuit).  "Gambone refused, stating that he was friends with Logan and that he knew all about Plouffe and that he would not give Plouffe any help."  Am. Compl. ¶ 98.  The following year, after Plouffe reported the unethical activities of the Department, he was told that Gambone said he was going to represent the Department in its complaint against Plouffe.[4]  <u>Id</u>. ¶ 100.

Regarding defendants Renzema, Kremser, and Toggia, Plouffe alleges that they agreed to help him on a confidential basis, but instead fed Plouffe's confidential information to the

---

[4] The Court notes that Plouffe does not allege that Gambone acted on behalf of APSCUF that second year, as Paul Quinn became the new local union president that year.  Am. Compl. ¶ 99.

Department Chair (a defendant in the first lawsuit), who subsequently used that information against him.  Id. ¶ 102.

At the motion to dismiss stage, the above allegations permit the Court to draw the reasonable inference that these four individual defendants conspired with the state University employees being sued in the first lawsuit.  A charitable interpretation of defendant Gambone's friendship with one of the state actor defendants, and Renzema, Kremser, and Toggia's feeding facts to the Department Chair push Plouffe's case from possibility into the realm of plausibility, as required by Iqbal.

b.   APSCUF, Steve Hicks, Julie Reese

As to defendants APSCUF, Steve Hicks (the APSCUF President), and Julie Reese (a director and APSCUF representative), however, the Court finds that there are insufficient allegations regarding a conspiracy between these three defendants and state actors to give rise to liability under § 1983.

Plouffe's only allegations specific to defendant Reese are that she met with Plouffe for about half an hour before his final hearing, refused to listen to Plouffe explain his side and his view of the legal issues, refused to examine the materials he brought with him, refused to ask for a continuance, and instructed him to just answer the University President's

questions.  At the hearing, Reese presented nothing in support of
Plouffe.  Am. Compl. ¶¶ 108-111.  Then, after his termination,
Reese told him he could not appear at the State Grievance
Committee hearing, and refused to allow him to submit more than
two pages or to speak with the Committee.  Id. ¶ 115.  None of
the above allegations even remotely connects Reese to a state
actor or suggests that Reese and a state actor came to a meeting
of the minds.  As such, this Court cannot reasonably interpret
her actions, or lack thereof, to constitute willful participation
in a conspiracy with state actors sufficient to qualify as action
under color of law.

Similarly, Plouffe claims that defendant Steve Hicks
(APSCUF President) refused to overrule the recommendation of the
State Grievance Committee, and failed to monitor the handling of
Plouffe's grievance.  Am. Compl. ¶¶ 116, 117.  Again, neither of
these allegations can reasonably be interpreted to constitute
willful participation in a conspiracy with a state actor.

Plouffe's allegations against APSCUF likewise lack
sufficient factual basis.  Plouffe alleges that APSCUF: appointed
defendant Gambone to represent the Department even though the
matter involved a conflict between Union members; would not allow
Plouffe to get copies of previous investigations, grievances, and
arbitrations against the University; refused to speak with
Plouffe both before and after his termination; denied requests to

meet with Union officers and attorneys; and refused to provide Plouffe with explanations of how they were going to proceed.  Am. Compl. ¶¶ 104, 105, 106, 107, 112, 113.  Again, there are no facts that connect the Union's actions or failure to act with state actors, suggest a meeting of the minds, or otherwise support a plausible inference of conspiracy.[5]

The Court therefore grants the motion to dismiss the § 1983 claims against APSCUF, Steve Hicks, and Julie Reese for failure to plead action under color of law.  Furthermore, because Plouffe has already amended his complaint in an attempt to address these arguments in response to the defendants' first motion to dismiss, the Court finds that granting leave to amend would be futile and dismisses the claims with prejudice.

### 3.   § 1983: Deprivation of Federal Right

The defendants next argue that even if Plouffe has adequately alleged state action, he has failed to allege deprivation of a federal right.  In this case, Plouffe alleges that the defendants conspired with the defendants in the first lawsuit.  Thus, for the reasons stated in the Court's memorandum

---

[5] This is especially the case in light of allegations elsewhere in the complaint that indicate that the Union lent assistance to Plouffe.  For example, Plouffe also alleges that the Union initiated proceedings to remove the Department Chair as an evaluator for Plouffe for his second year review, and helped submit documents on Plouffe's behalf after his termination hearing.  Am. Compl. ¶¶ 45, 66.

and opinion dated April 12, 2011 in the first lawsuit, the Court finds that Plouffe has adequately alleged a deprivation of a federal right as to his § 1983 claims against defendants Gambone, Renzema, Kremser, and Toggia.  See ECF No. 57 in 10-cv-1502.

B.  *Weingarten* Claim

1.  Federal

The defendants argue that Plouffe does not possess a federal Weingarten right because that right arises under the National Labor Relations Act ("NLRA"), which does not afford protection to state employees.  The Court agrees.

In Weingarten, the Supreme Court upheld a decision of the National Labor Relations Board ("NLRB") that an employer's denial of an employee's request for a union representative during an investigatory interview which the employee reasonably believed might result in disciplinary action constituted an unfair labor practice under § 7 of the National Labor Relations Act ("NLRA").  NLRB v. Weingarten, Inc., 420 U.S. 251, 262, 267 (1975); Defense Crim. Investig. Serv. v. Fed. Labor Relations Auth., 855 F.2d 93, 96 (3d Cir. 1988).  In other words, the Weingarten right to have a union representative at an investigatory interview is a federal right under § 7 of the NLRA.

The NLRA does not cover public employers or their employees, however.  See 29 U.S.C. § 152(2) (defining "employer"

to exclude any State or political subdivision thereof);

Amalgamated Transit Union v. Byrne, 568 F.2d 1025, 1040 n.12 (3d

Cir. 1977).   Indeed, the Third Circuit held in Jackson v. Temple

University that public employees covered by the Pennsylvania

Public Employee Relations Act ("PERA"), 43 Pa. Cons. Stat. §

1101.101, are not covered by the NLRA.   721 F.2d 931, 933-34 (3d

Cir. 1983).   Plouffe does not dispute that he was a public sector

employee.   Nor has he cited a single case permitting state public

employees to bring a claim for vindication of federal Weingarten

rights - under the NLRA or otherwise.   As such, Plouffe's federal

Weingarten claim is dismissed for lack of subject matter

jurisdiction.   See Jackson, 721 F.2d at 933-34.


    2.   State

    Plouffe also brings his Weingarten claim under

analogous state law.   Since the Supreme Court's Weingarten

decision, both Pennsylvania courts and the Pennsylvania Labor

Relations Board ("PLRB") have adopted the right to union

representation during an investigatory interview and recognized

the right under PERA.   See Commonwealth v. Pa. Labor Relations

Bd., 916 A.2d 541, 547 (Pa. 2007).   The Pennsylvania Supreme

Court has held that the state Weingarten right is based upon the

right of the individual employee to engage in mutual aid and

protection under section 401 of PERA.   Id. at 549; 43 Pa. Cons.

16

Stat. § 1101.401.  Article XII of PERA, which sets forth unfair labor practices, prohibits public employers and their agents or representatives as well as "[e]mploye organizations, their agents, or representatives"[6]  from restraining or coercing employees in the exercise of rights guaranteed in Article IV of PERA - including section 401.  43 Pa. Cons. Stat. §§ 1101.1201(a)(1), (b)(1).

The defendants contend that Plouffe's state Weingarten claim is within the exclusive jurisdiction of the PLRB, was previously litigated to finality, and is untimely.  The Court agrees that the claim is within exclusive PLRB jurisdiction and declines to decide the statute of limitations issue.

The Pennsylvania Supreme Court has held that if a party seeks redress of conduct which arguably constitutes one of the unfair labor practices under PERA, jurisdiction to determine whether an unfair labor practice has occurred lies in the PLRB, and nowhere else.  Hollinger v. Dep't of Public Welfare, 365 A.2d 1245, 1248-49 (Pa. 1976).  Indeed, PERA states that the PLRB's power to prevent unfair practices "shall be exclusive."  43 Pa. Cons. Stat. § 1101.1301.  Thus, courts in this district have

---

[6] The term "employe organization" is defined in 43 Pa. Cons. Stat. § 1101.301(3) as "an organization of any kind, or any agency or employe representation committee or plan in which membership includes public employes, and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, employe-employer disputes, wages, rates of pay, hours of employment, or conditions of work."

dismissed claims for unfair labor practices under PERA in deference to the PLRB's exclusive jurisdiction. See, e.g., Lindenbaum v. City of Phila., 584 F. Supp. 1190, 1201 (E.D. Pa. 1984); Sellers v. Local 1598, 600 F. Supp. 1205, 1213 (E.D. Pa. 1984); see also Felder v. De. Cnty. Office of Servs. for the Aging, No. 08-4182, 2009 WL 2278514, at *6 (E.D. Pa. July 28, 2009) (granting motion for judgment on the pleadings on PERA claim for the same reason). Here, because Plouffe's state law Weingarten claim seeks redress of conduct which constitutes an unfair labor practice under PERA, it lies within the exclusive jurisdiction of the PLRB.

It appears that Plouffe previously litigated a state-law based Weingarten claim against the University - not the Union - before the PLRB. The PLRB issued a decision dismissing Plouffe's charges. Plouffe v. State System of Higher Educ. Kutztown Univ., 41 PPER ¶ 82, 2010 WL 6808284 (2010). Plouffe claims an appeal of that decision was taken in state court, but that the appeal was "dismissed with the Weingarten claim being brought in the companion federal court case [10-cv-1502]."[7] Pls.' Br. 6. If Plouffe seeks redress against the Union as to the denial of his state Weingarten right, exclusive jurisdiction

---

[7] In the first lawsuit, Plouffe added a Weingarten claim in his second amended complaint. ECF No. 105 in 10-cv-1502. That count remains in the operative complaint in that case, as the defendants in that case did not subsequently move to dismiss that claim.

lies with the PLRB, not in this Court.  If Plouffe seeks redress against the University, he already litigated that claim before the PLRB and took appeal from that decision.  Either way, the Court sees no reason why a state <u>Weingarten</u> claim should survive against the Union defendants in this case.  Because the Court dismisses this claim on exclusive jurisdiction grounds, the Court does not decide whether the claim complied with the statute of limitations period.

C.   <u>Other State Law Claims</u>

Because federal § 1983 claims remain against defendants Gambone, Renzema, Kremser, and Toggia, the Court briefly examines whether there is supplemental jurisdiction over Plouffe's state law claims.  The Court finds that there is supplemental jurisdiction over the state law claims, including as to defendants APSCUF, Hicks, and Reese, against whom no federal claims remain.  However, as outlined below, the Court dismisses the state law claims for failure to state a claim.

1.   <u>Supplemental Jurisdiction</u>

Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over any claims that are so related to claims in the action within the court's original jurisdiction that they form part of the same case or controversy.  This

includes claims that involve the joinder of additional parties.
Borough of W. Mifflin v. Lancaster, 45 F.3d 780, 784 (3d Cir.
1995).  The statute grants authority to exercise jurisdiction
over state claims brought against a party even when that party is
not subject to the federal claim on which jurisdiction is
predicated.

     The state law claims must (1) share a "common nucleus
of operative fact" with the claims that supported the court's
original jurisdiction, and (2) be such that the plaintiff would
ordinarily be expected to try the state and federal claims all in
one judicial proceeding.  De Asencio v. Tyson Foods, Inc., 342
F.3d 301, 308 (3d Cir. 2003); Pryzbowski v. U.S. Healthcare,
Inc., 245 F.3d 266, 275 (3d Cir. 2001).  The Court finds that
both prongs are satisfied in this case, where both federal and
state claims stem from Plouffe's termination from the University.

     2.   Count 4: Pennsylvania Administrative Agency Law[8]

     Count 4 is titled "Pennsylvania Constitutional Due
Process Pennsylvania Statute Administrative Agency Law of
Pennsylvania Including But Not Limited to 1 Pa. Code 35.126, 131,
137, 138, 166, 191, 2 Pa. C.S.A. §§ 501 et seq."  This count is

---

[8] A similar count exists in the operative complaint of the
first lawsuit, but defendants did not move to dismiss that claim
in that case.  Thus, Plouffe's argument that the Court has
already "approved" of his administrative agency law claim in the
first lawsuit is somewhat disingenuous.

not a model of clarity.   Plouffe alleges that the "Defendants" failed to follow adequate procedures pursuant to Pennsylvania state administrative agency law in their investigation and prosecution of him, but this sentence appears to refer to the defendants in the first lawsuit.[9]  He further alleges that the "Defendants, by their approval/ratification of the termination of Plouffe and the violation of these state statutes during Plouffe's termination, also violated them."  Am. Compl. ¶ 125. As best as the Court can tell, Plouffe's claim is that the Union defendants in this case are conspiratorially liable for the actions taken by defendants in the first lawsuit to violate administrative agency law.

However, Plouffe has made no allegations that the defendants are agencies to which the various administrative agency laws and regulations he cited apply.[10]  Furthermore, he pleads insufficient facts to sustain a plausible inference that these defendants conspired with the defendants in the first

---

[9] To the extent Plouffe attempts to bring a claim under the Pennsylvania constitution, the Court has already dismissed a similar claim in the first lawsuit because no Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.  See ECF No. 57 in 10-cv-1502; Jones v. City of Phila., 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006).

[10] 2 Pa. Cons. Stat. § 501(a) provides that the subchapter shall apply to "Commonwealth agencies."  Similarly, the Pennsylvania Code provisions that Plouffe cites govern the practice and procedures before "agencies of the Commonwealth."  1 Pa. Code § 31.1.

21

lawsuit to violate administrative agency laws.  The Court therefore dismisses the claim as to all defendants for failure to state a claim.  Because the plaintiff has already had an opportunity to amend to correct these deficiencies, the Court denies leave to amend as futile.

### 3. Counts 7 & 8: Duty of Fair Representation and Fiduciary Duty

Counts 7 and 8 allege that the defendants violated their duty of fair representation of Plouffe and their fiduciary duties to him.  Because Kutztown University is a public sector employer and Plouffe was a public employee, these claims are governed by Pennsylvania labor law, not federal law.  See Jackson v. Temple Univ., 721 F.2d 931, 933 (3d Cir. 1983); Dubose v. District 1199C, 105 F. Supp. 2d 403, 416 (E.D. Pa. 2000).  The Court considers these claims together.  See Falsetti v. Local Union No. 2026, 161 A.2d 882, 895-96 (Pa. 1960).  The defendants raise a litany of arguments against these claims: (1) that no action for breach of the duty of fair representation lies against individual union representatives; (2) that the statute of limitations has expired; (3) that Plouffe's sole remedy against the Union is a suit in equity for an order to compel arbitration of his grievance; and (4) that Plouffe fails to plead any facts that constitute bad faith on the part of the Union.  The Court addresses each argument in turn.

A union bears a duty of fair representation to the members of the bargaining unit that it is certified to serve.  In return, the members and employees are beneficiaries of a fiduciary obligation owed to them by the union.  <u>Falsetti v. Local Union No. 2026</u>, 161 A.2d 882, 895 (Pa. 1960); <u>Case v. Hazelton Area Educ. Support Personnel Ass'n</u>, 928 A.2d 1154, 1158 (Pa. Commw. Ct. 2007).  Under Pennsylvania law, a union that fails to act in good faith, in a reasonable manner and without fraud, in processing an employee's grievance becomes liable in damages for breach of duty.  <u>Falsetti</u>, 161 A.2d at 895; <u>Ziccardi v. Commonwealth of Pa.</u>, 456 A.2d 979, 981 (Pa. 1982).

First, the defendants are correct that the fiduciary duty owed to the member-employee is by the union, not by its individual representatives.  "Officials of the Union, acting in their authorized capacities, cannot be held individually liable in damages to a member-employee for failure to process a grievance since they are but agents responsible only to the Union itself."  <u>Falsetti</u>, 161 A.2d at 896.  Plouffe does not dispute that no action lies against the individual Union representatives and officials.  Thus, the Court dismisses Counts 7 and 8 with prejudice as against all of the individual defendants.

Second, the defendants argue that Plouffe's claim against APSCUF can only be for actions occurring after his discharge on October 9, 2009 because of the statute of

limitations.  Pennsylvania courts have held that duty of fair representation claims against unions are subject to a two-year statute of limitations.  <u>Casner v. AFSCME</u>, 658 A.2d 865, 870 (Pa. Commw. Ct. 1995).  In Pennsylvania, the statute of limitations period commences at the time the harm is suffered or, if appropriate, at the time the alleged violation is discovered.  <u>Id</u>.  The defendants have not made any argument as to why, in their view, the clock on the limitations period began to tick before Plouffe was terminated, since this is a claim for breach of duty of fair representation and presumably also includes post-discharge conduct.  Thus, the Court declines to decide on statute of limitations grounds at this stage.

Third, the defendants argue that under PERA, Plouffe's sole remedy against the Union is an action in equity to compel arbitration - not an action for damages.  The Court is not inclined to agree, but need not ultimately decide this state law issue.

In <u>Falsetti v. Local Union No. 2026</u>, the Pennsylvania Supreme Court considered an employee's right to sue his employer in equity for discharge in violation of a collective bargaining agreement ("CBA") where the union breached its duty of fair representation.  In that case, the plaintiff alleged that the union and the employer conspired to violate his rights under the CBA.  161 A.2d at 884.  He sued his former employer and union

officials, seeking both equitable relief and damages.  The court held that the plaintiff's claim against the union officials failed because the fiduciary obligation stemmed from the union itself, not from the officials.  In doing so, however, the court stated that "[t]he suit would be properly brought [for damages] if directed against the Union for breach of its fiduciary obligations."  Id. at 895.

The Pennsylvania Supreme Court reiterated that statement in Ziccardi v. Commonwealth of Pa.: "In Falsetti, this Court held that a public employee's remedy for his bargaining agent's refusal to submit a grievance to arbitration is an action against the union for damages for breach of its duty of fair representation . . . when the complaint alleges bad faith."  456 A.2d at 981.

The defendants rely chiefly on the Pennsylvania Supreme Court's later decision in Martino v. Transport Workers' Union, 480 A.2d 242 (Pa. 1984), for the proposition that Plouffe's sole remedy is to sue APSCUF and his employer in equity for an order to compel arbitration of his grievance.  In Martino, the Pennsylvania Supreme Court held that an employee may sue his employer in equity where the union breaches its duty of fair representation when joinder is necessary to afford him an adequate remedy.  However, the court limited a public employee's relief under PERA to an order compelling arbitration of the

underlying grievance where the employer bargained for a grievance procedure.  480 A.2d at 245.  See also Runski v. Am. Fed. Of State, 598 A.2d 347, 350 (Pa. Commw. Ct. 1991); 20 Summ. Pa. Jur. 2d Employment & Labor Relations § 9:115.  Martino and Runski, however, appear to only control a plaintiff's available remedies against an *employer*.

This Court does not read Martino as expressly eliminating an action for damages under Falsetti and Ziccardi against a *union* where breach of the duty of fair representation and bad faith are alleged.  See Case v. Hazleton Area Educ. Support Personnel Ass'n, 928 A.2d 1154, 1159 (Pa. Commw. Ct. 2007) (reiterating Ziccardi's instruction that a public employee has an action against the union for damages for breach of its duty of fair representation); Krenzelak v. Canon-McMillan Sch. Dist., 566 A.2d 346, 348 (Pa. Commw. Ct. 1989) ("A review of existing case law leads us to conclude that an employee who believes a union has breached its duty of fair representation must file an independent action against the union seeking damages, joining the employer as a party if necessary to facilitate a meaningful remedy.").

Nevertheless, the Court need not ultimately decide the state law issue of whether an action against a Union for damages is cognizable because the Court finds that Plouffe has not adequately alleged bad faith on behalf of the Union, as required

by <u>Ziccardi</u>.  <u>Ziccardi</u>, 456 A.2d at 981.  In <u>Dorfman</u>, the state
court found that the following allegations were not sufficient to
survive the Union's preliminary objection: (1) that the Union
without reason or cause in bad faith failed to investigate the
grievance fully; (2) that the Union in bad faith failed to follow
its customary practices in handling discharge grievances; (3)
that the Union in bad faith and without reason failed to demand
arbitration.  <u>Dorfman v. Pa. Soc. Servs. Union</u>, 752 A.2d 933,
936-37 (Pa. Commw. Ct. 2000).

    In his opposition, Plouffe points to the following
allegation as evidence that he pleaded bad faith:

> Plouffe repeatedly brought to the attention of the
> Defendants both their Union duties and their duties under
> the law.  Regardless, the Defendants apparently violated
> them.  Plouffe asserts that the violations alleged in this
> matter constitute bad faith.

Am. Compl. ¶ 119.  This allegation is conclusory and no more
detailed in factual content than those deemed insufficient by the
state court in <u>Dorfman</u>.  Plouffe also alleges that he was
informed that "[defendant Reese] had advised the State
Arbitration Committee not to take the matter to arbitration and
that the lawyers had told her that there was no legal basis for
the grievance."  Am. Compl. ¶ 114.  But unions have broad
discretion in determining which matters to arbitrate, so bad
faith is not shown by mere refusal to arbitrate grievances - even
those with merit.  See <u>Martino</u>, 480 A.2d at 250 n.12; <u>Givigliano</u>

v. Phila. Housing Auth., 1996 WL 1358498, 32 Phila. Co. Rptr. 289, 295 (Pa. Ct. Comm. Pl. 1996).  Plouffe's allegations amount to nothing more than his dissatisfaction with APSCUF's performance, and are insufficient for bad faith.

Therefore, the Court dismisses these state law claims against all defendants, and denies leave to amend as futile since Plouffe already had an opportunity to amend after the defendants raised these arguments in their first motion to dismiss.

An appropriate order follows.